IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRADFORD S. DAVIC,

          Petitioner,

   v.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,

          Respondent.

CASE NO. 2:13-cv-736
JUDGE GREGORY L. FROST
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Franklin County Grand Jury indicted appellant on one count of importuning, five counts of rape, and one count of gross sexual imposition. Appellant agreed to plead guilty to four of the rape counts. Two counts were for rape by cunnilingus and two were for rape by digital vaginal penetration. Appellant also agreed to plead guilty to the importuning and gross sexual imposition counts. He signed a guilty plea form indicating that the defense and prosecution were not recommending a sentence. The form also explained that he could receive a maximum sentence of ten years to life in prison for each rape count, eight years in prison for the importuning count, and five years in prison for the gross sexual imposition count. In addition, it stated that he could receive a maximum total sentence of 53 years to life in prison.

At the plea hearing, the court asked appellant if he understood the plea form, and appellant said, "The only thing I questioned * * * just because it wasn't on there, was that I am agreeing today to a plea deal that was going to be a sentence of ten years with * * * life on the back side." The court responded, "Well, we will go over that in just a minute." (Tr. 3.) The court next asked appellant, "Did you sign this [plea form] voluntarily? In other words, no one forced you, threatened you or promised you anything to get you to sign this?" (Tr. 4.) Appellant indicated that he signed the plea form voluntarily and that he was not promised anything. After explaining the maximum sentences on each count, the court asked appellant, "The total maximum possible sentence you could receive in all of these would be 53 years to life. Do you understand that?" (Tr. 6–7.) Appellant answered, "Yes, sir." (Tr. 7.) The court asked appellant if he had any questions, and appellant said that he did not.

Afterward, the prosecutor recited the facts of the case as follows. Appellant, a man in his mid–40s from Pittsburgh, befriended a 12–year–old Columbus girl on the internet. He drove to Columbus and had sex with the girl in a park. He digitally penetrated her vagina and performed cunnilingus. The police came and arrested him, and he admitted to them that he raped the girl.

The court accepted appellant's guilty plea and continued the case for sentencing. At sentencing, the prosecutor argued that appellant's rape offenses do not merge because "they are four distinct sex acts." The prosecutor said that, based on appellant's confession, "cunnilingus occurred, then digital vaginal penetration occurred, then cunnilingus occurred again, then digital vaginal penetration." (Tr. 14.) The court concluded that appellant's rape offenses do not merge, and appellant did not object. The court sentenced him to ten years to life in prison on each of the four rape counts. The court ordered him to serve the rape sentences consecutively to each other and concurrently to eight years in prison on the importuning count and five years in prison on the gross sexual imposition count. The total sentence was 40 years to life.

II. ASSIGNMENTS OF ERROR

Appellant filed a timely notice of appeal and assigns the following as error:

2

> [I.] Appellant's guilty plea was invalid as it was not entered in a knowing, voluntary, and intelligent manner as required by Crim. R. 11(C)(1) and due process guarantees under the state and federal Constitutions.
>
> [II.] The trial court abused its discretion in imposing consecutive sentences on rape charges that involved the same conduct.

*State v. Davic*, No. 11AP-555, 2012 WL 760846, at *1 (Ohio App. 10th Dist. March 6, 2012). On July 25, 2012, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Davic,* 132 Ohio St.3d 1482 (2012).

Petitioner next filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that his guilty plea was not knowing, intelligent and voluntary (claim one); that his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment and violated the Equal Protection Clause (claim two); and that the $2 million bail imposed constituted cruel and unusual punishment and violated the prohibition against excessive bail (claim three). *Petition*, PageID #8. It is the position of the Respondent that Petitioner's claims are waived or without merit.

**<u>Claims Two and Three - Procedural Default</u>**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also

3

waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin*, 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.* "Cause" under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

4

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc,* 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In claims two and three, Petitioner asserts that excessive bail and his sentence violated the Eighth Amendment and the Equal Protection Clause and the prohibition against excessive bail. These claims, being readily apparent from the face of the record, should have been raised on direct appeal but were not. Further, Petitioner may now no longer present these claims to the state courts under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The State of Ohio has a procedural rule that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*. The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be

5

"adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351, (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex* rel. *Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still obtain review of these claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule."

6

>*Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as the claim has been presented to the state courts, and is not itself procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488–89).  Such are not the circumstances here.  Petitioner has never presented a claim of ineffective assistance of counsel to the state courts and this claim, likewise, is procedurally defaulted.

Petitioner has failed to establish cause for his procedural default.

Beyond the four-part *Maupin* analysis, this Court considers whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496; *see also Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)(same).  Petitioner has not argued that he meets this standard and review of the record fails to indicate that this is an extraordinary one.  Accordingly, the procedural default bars this Court from addressing claims two and three.

**Claim One – Voluntary Plea of Guilty**

    **A.  Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v.*

*Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86. 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a

8

> different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. Id. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, ––U.S. ––––, ––––, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor,* 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter,* 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in

9

evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

**B. Merits**

In claim one, Petitioner asserts that his guilty plea was not knowing, intelligent, or voluntary. Petitioner maintains that his attorney advised him that, pursuant to the terms of his guilty plea, the trial court would impose a sentence of ten years to life incarceration. Petitioner contends that his attorney repeatedly assured him that his sentence would be ten years to life, and that this was the best deal he would get. Petitioner complains that he was "compelled" to accept the plea agreement, as he had no chance of winning at trial. According to Petitioner, prior to signing the Plea Agreement, he noticed that it did not indicate he would be sentenced to ten years to life. His attorney, however, assured him that this was just a "formality." Relying on his attorney, Petitioner entered the guilty plea. *See Petition*, PageID #14-16. The trial court imposed a term of forty years to life. The state appellate court rejected this claim in relevant part as follows:

> The federal and state constitutions require that a guilty plea be knowing, intelligent, and voluntary. *State v. Veney*, 120 Ohio St.3d 176, 2008–Ohio–5200, ¶ 7. Appellant argues that his guilty plea did not meet this standard because, when the trial court accepted it, he did not understand what sentence he was facing.
>
> During the plea hearing, appellant questioned the plea form he signed because it did not say that he was "agreeing today to a plea deal that was going to be a sentence of ten years with * * * life on the back side." (Tr. 3.) The trial court said that it would discuss the matter later in the hearing, and, contrary to appellant's assertions, it did, in fact, do so. Specifically, the court asked appellant if he understood that he faced a maximum total sentence of 53 years to life in prison, and appellant indicated that he did. The court also

> asked appellant if he was promised anything in exchange for his plea, and appellant said that there were no promises. Lastly, the court asked if appellant had any questions. Appellant asked no questions and brought up no issues about his sentence.
>
> \*\*\*
>
> [a]ppellant failed to establish that he did not understand what sentence he was facing when the trial court accepted his guilty plea. Therefore, we conclude that his plea was knowing, intelligent, and voluntary. We overrule appellant's first assignment of error.

*State v. Davic*, 2012 WL 760846, at \*2.

Petitioner contends that the transcript of his guilty plea hearing shows his confusion regarding the sentence. He thought he had been promised a sentence of ten years to life. According to Petitioner, his plea was coerced because he was threatened with the alternative of a trial. He contends that neither the trial court nor his attorney ever advised him that he could be sentenced to anywhere within the statutory range. *See Petition*, PageID #14-16. The record refutes these allegations.

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, any plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama,* 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the court must look at the totality of circumstances surrounding the plea. *Id*. A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976).

A criminal defendant cannot successfully challenge the voluntariness of his or her plea simply because the government is responsible for some of the factors motivating him or her to plead. *Brady v. United States*, 397 U.S. 742, 750 (1970). The prosecutor, however, must keep any promises he or she made in the plea agreement. *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978). When a prisoner challenges his guilty plea on the basis that it was induced by an unkept promise, the Court must determine whether the allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently frivolous or false, as to warrant a summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977). In applying this standard, the Court will indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id*. at 74.

On April 13, 2011, Petitioner signed an *Entry of Guilty Plea* explicitly indicating that he understood that he faced a sentence of ten years to life on each of the four rape charges, *i.e.*, counts three through six; eight years on count one; and five years on count seven. As such, he acknowledged that he faced a total of fifty-three years to life incarceration. *Exhibit 4 to Return of Writ*. The *Entry of Guilty Plea* did not indicate that the prosecution and defense jointly recommended any specific sentence. *Id*.

On that same date, and at the time of his guilty plea hearing, Petitioner acknowledged that he had signed the guilty plea form and reviewed it with his attorney. Petitioner expressed his concern that there was no indication on the guilty plea form that he was agreeing to a sentence of ten years to life. "[I]t only concerned me that that wasn't on there anywhere." *Transcript,* PageID #212. The trial court, however, thereafter reviewed the terms of his plea agreement with Petitioner. The prosecutor had agreed to dismiss one of the rape charges against Petitioner, as well as the sexually violent predator specifications. PageID #214-15. The

prosecutor explained that, as a result, Petitioner therefore faced ten years to life on each of the four rape charges, rather than twenty-five years to life. *Id.* The trial court explained the potential sentence on each of the charges to which Petitioner was pleading guilty, as is also reflected on the *Entry of Guilty Plea,* which included a term of ten years to life on each of the four rape charges against him. The trial court explicitly advised Petitioner that he faced a total possible maximum term of fifty three years to life. Petitioner indicated that he understood. PageID #215-16. The trial court further advised Petitioner that he faced a mandatory prison term of ten years on each of the four rape charges against him. PageID #216. Petitioner had no questions. PageID #217. He denied being threatened, forced or made any promises to induce his guilty plea. PageID #213.

At sentencing, the prosecutor requested the court to impose a sentence "at the higher end of the spectrum" that Petitioner faced. PageID #225. Defense counsel stated, "[W]e did enter a plea. It was our understanding that there would be a life sentence." PageID #228. "When we negotiated this case, we were anticipating a sentence of 10 years to life. I see no advantage in stacking up year after year on top of a life sentence. A life sentence is what it is." PageID #229. The trial court imposed an aggregate term of forty years to life. PageID #240.

Petitioner received the benefit of his bargain: a sentence within the range of ten years to life. To the extent that Petitioner now alleges he believed he would be sentenced to something else, the record contradicts this claim.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

13

*Blackledge v. Allison,* 431 U.S. at 74. Petitioner's allegation of any off-the-record promise is not worthy of credit in view of the record before this Court. Further, the fact that Petitioner had to choose between a trial or entry of a guilty plea does not cause his guilty plea to be invalid. As explained by the United States Court of Appeals for the Sixth Circuit:

> Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties.... To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards.

*Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992). Absent extraordinary circumstances or some explanation by Petitioner as to why he did not previously reveal, particularly when he was specifically asked to do so, an undisclosed promise, Petitioner's plea agreement is consists of those terms discussed in open court. *Id*. Such are the circumstances here.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

<u>**Procedure on Objections**</u>

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                      s/ *Elizabeth A. Preston Deavers*
                                                      Elizabeth A. Preston Deavers
                                                      United States Magistrate Judge

October 17, 2014